IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE SPIKES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| CHARTIS CLAIMS, INC. F/K/A | § | |
| AIG DOMESTIC CLAIMS, INC. | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S FIRST ORIGINAL COMPLAINT, REQUEST FOR DISCLOSURE AND JURY DEMAND

TO THE HONORABLE COURT:

COME NOWS Willie Spikes, in the above entitled and numbered cause, and file this Plaintiff's First Original Complaint, complaining of Chartis Claims, Inc. f/k/a AIG Domestic Claims, Inc. ("AIG") and in support thereof respectfully shows the Court the following:

### I.

### PARTIES

1.      Plaintiff is Willie Spikes (hereinafter "Plaintiffs" or "Spikes"). Willie Spikes is an individual and resides in Dallas County, Texas.

2.      Defendant Chartis Claims, Inc. f/k/a AIG Domestic Claims, Inc. ("AIG") is a Delaware insurance company doing business in Texas and may be served with process by serving its registered agent United States Corporation Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.

### JURISDICTION

3.      The Court has Federal jurisdiction pursuant to 28 U.S.C. §1332 (diversity jurisdiction).

## III.
### VENUE

4.      Venue of this cause is proper in this district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## IV.

### FACTS

5.      Plaintiff Willie Spikes was employed by Stafford Transport Inc. ("Stafford") as a waste management driver. Stafford required Spikes to have and purchase Occupational Hazard Insurance. Spikes purchased Occupational Hazard Insurance from AIG on July 19, 2005. At the time Spikes purchased the policy, AIG presented Spikes with documentation regarding the benefits and policy he was purchasing and the amount of the premiums for such policy. The policy is not one that is covered under ERISA. Spikes accepted the terms as presented to him by AIG at the time of purchase.

6.      On October 8, 2005, Spikes was injured on the job. Spikes' injuries were so severe it rendered him unable to work and disabled.

7.      Spikes made a claim under the policy he purchased with AIG. AIG began paying weekly benefit payments to Spikes.

8.    On or about October 3, 2007, AIG informed Spikes that his "Temporary Total Disability and Accident Medical" expenses benefits were limited to 104 weeks under the provision of the policy. AIG also informed Spikes he could be eligible for additional disability benefits under the "Continuous Total Disability Benefit" portion of the policy.

9.    The policy purchased by Spikes had no such time limitation or disability benefits. The policy purchased by Spikes provides uninterrupted benefits from the date of total disability until the time Spikes turns 70. Spikes was rendered totally disabled as of October 2007 and remains so today.

10.    Spikes immediately informed AIG that there was no limitation of 104 weeks of temporary disability benefits in the policy he purchased. Spikes also informed AIG the letter was not accurate and requested his benefits be reinstated in accordance with the policy.

11.    AIG gave Spikes the run around and after **repeated** requests by Spikes, AIG faxed Spikes two (2) pages of a policy which Spikes had never seen before. AIG represented to Spikes these were the terms of the policy he purchased. This was the first time Mr. Spikes had seen these provisions.

12.    The provisions and pages faxed to Mr. Spikes were different than the policy given to him.

13.    Mr. Spikes wrote to AIG on April 15, 2008 regarding the error. No response was given.

14.    Mr. Spikes hired counsel regarding his claims. On May 4, 2009, Mr. Spikes made a demand for a copy of the written policy.

15. On May 12, 2008 AIG mailed a document purporting to be the policy purchased by Mr. Spikes. Mr. Spikes had never seen, agreed to, or signed this policy. On this day, Mr. Spikes discovered AIG attempting to purport a different policy applied to Spikes.

16. AIG has repeatedly ignored Mr. Spikes requests, refused to honor its policy or provide Mr. Spikes with any benefits. Since then Mr. Spikes has discovered that by its actions that AIG does not intend to honor the policy purchased by Spikes.

17. Mr. Spikes is disabled and cannot work or earn a living. He has no source of income and for two (2) years has had to rely on public assistance to survive. He has lost all property owned by him.

## V.

## BREACH OF CONTRACT

18. Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1 through 17 above as if fully set forth at this point herein.

19. Plaintiff will show that AIG issued a written policy providing uninterrupted disability benefits from the date Spikes is rendered totally disabled till the time he turns 70.

20. AIG has refused to honor the terms of the contract and has continuously required Spikes to submit social security documentation to determine "eligibility for further benefits."

21. As a result of AIG's breach of the policy, Plaintiff has suffered or will suffer damages for which he now sues.

## VI.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

22.     Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1 through 21 above as if fully set forth at this point herein.

23.     Plaintiff was an insured under the policy issued by AIG, which gave rise to a duty of good faith and fair dealing.  AIG has deliberately refused to honor the terms of the policy purchased by Spikes.  AIG has also deliberately ignored Spikes request to honor the terms of the policy he purchased when it knew or should have known there was coverage because coverage was reasonably clear.

24.     Defendant breached the duty by denying payment of a covered benefit when Defendant knew or should have known its liability under the policy was reasonably clear.

25.     Defendant's breach of duty proximately caused injury to Plaintiff, which resulted in loss of benefits, mental anguish, interest, court costs and attorneys fees.

26.     Plaintiff suffered injury independent of the loss of policy benefits, and that injury resulted from Defendant's gross negligence, malice or actual fraud, which entitles Plaintiff to exemplary damages.

## VII.

## UNFAIR AND DECEPTIVE INSURANCE PRACTICES

27.    Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 26 above as if fully set forth at this point herein.

28.    Plaintiff is a consumer who has been injured by AIG's deceptive acts or practices in the business of insurance. Plaintiff will show that AIG violated the Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which AIG's liability had become reasonably clear, and by failing to properly investigate Plaintiff's claim.

29.    Plaintiff will further show that AIG's conduct is in violation of the Insurance Code in that AIG made false statements of material fact and/or failed to disclose material facts, so that other statements are rendered misleading, and made statements in a way that would lead a reasonably prudent person to a false conclusion about a material fact, and by making a material misrepresentation of the law.

30.    Plaintiff will show that AIG's conduct as alleged herein was a producing cause of Plaintiff's damages. Plaintiff will further show that he is entitled to additional statutory treble damages because AIG's wrongful conduct was knowing and intentional.

31.    Additionally, Plaintiff seeks equitable relief under Section 17.50(b)(2) of the Texas Business & Commerce Code by way of an order enjoining AIG from engaging in such deceptive acts.

## VIII.

## ATTORNEYS FEES

32.      In the preparation and prosecution of this lawsuit Spikes retained Nellie G.

Hooper, Esq. to represent him in this action and has agreed to pay her reasonable and

necessary attorney's fees. Accordingly, Spikes asks the court to render judgment against

AIG for reasonable and necessary attorney's fees incurred in this proceeding in an amount

in excess of $25,000 through the trial of this action, an additional $12,000 in the event of

an appeal to the Fifth Circuit Court of Appeals, an additional $7,500 in the event a

Petition for Review is filed with the United States Supreme Court, and an additional

$7,500 in the event the Petition for Review is granted, with all of the appellate attorneys

fees being contingent upon the appeal, if any, of AIG, being unsuccessful.

## IX.

## JURY DEMAND

33.      Plaintiff demands a jury trial.

## X.

## PRAYER

WHEREFORE PREMISES CONSIDERED Plaintiff asks that AIG be cited to appear

and answer and that Plaintiff be awarded judgment against AIG as follows:

AIG be cited to appear and answer this petition and that on final trial of the cause:

A.      The court render judgment against AIG, awarding the
Plaintiff recovery of the following:

1.      Any actual damages incurred;

2.      Mental anguish;

3.      Nominal Damages;

4.    Exemplary Damages;

5.    Treble Damages;

6.    Pre-judgment and post-judgment interest;

7.    Costs of suit;

8.    Attorneys fees; and

9.    All other relief, in law and in equity, to which Plaintiff may be entitled.

Respectfully Submitted,

**BLANSCET SUTHERLAND HOOPER & HALE, L.L.P.**

By:_____

**NELLIE G. HOOPER**
State Bar No. 00798211
**BARBARA HALE**
State Bar No. 24012762
14285 Midway Road, Suite 400
Addison, Texas 75001
(214) 764-7977 phone
(214) 764-7981 fax

ATTORNEYS FOR PLAINTIFF
WILLIE SPIKES